IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOANNE BLAKELY, )
)
    Plaintiff, )
)
v. ) CASE NO. 2:17-cv-72-TFM
) [wo]
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
    Defendant. )

**MEMORANDUM OPINION AND ORDER**

On April 21, 2014, Joanne Blakely ("Plaintiff" or "Blakely") applied for disability insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability date of November 13, 2013. (R. 173-76). The application was initially denied and she timely requested a hearing. (R. 100-13, 115-122). A hearing was held before the Administrative Law Judge ("ALJ"). (R. 72-99). The ALJ rendered an unfavorable decision on December 24, 2015. (R. 50-71). The Appeals Council denied Plaintiff's request for review. (R. 1). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is **AFFIRMED**.

**I. NATURE OF THE CASE**

Blakely seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse

and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. § 405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by

substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security

---

[1] DIB is authorized by Title II of the Social Security Act and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at*

Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).[3]

> (1) Is the person presently unemployed?
> (2) Is the person's impairment(s) severe?
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the

---

http://www.ssa.gov/OP_Home/handbook/handbook.html
[3] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("the grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Blakely was 47 years old at the time of her alleged onset date, November 13, 2013. She was classified as a "younger individual age 18-49" and remained so through the date of the ALJ's December 24, 2015 denial. She has at least a high school education and worked in the relevant past as a Composite Layup Worker. (R. 66-67, 173, 192). Blakely worked for Westland Aerospace for 23 years, making helicopter parts. She was terminated due to medical reasons. (R. 79).

Blakely alleged that she has been unable to work since November 2013 due to back problems, numbness and nerve problems in her legs and knee problems. (R. 191). In evaluating

Plaintiff's applications, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 55-67). After finding Blakely had not engaged in substantial gainful activity since her alleged onset date, (R. 55), the ALJ found at step two that Plaintiff had severe impairments of status post arthroscopic surgery bilateral knees; small arthritic spurs, loss of normal curvature, mild spondylolisthesis, lumbar spine; arthritis, thoracic spine; questionable arthritis, left foot; fibromyalgia in the context of obesity; and diffuse osteoarthritis in the context of obesity. (R. 55). The ALJ also found Plaintiff had the non-severe impairments of obesity; sleep apnea; hypertension; anemia; questionable syncopal episode, shortly prior to alleged onset date; mild S1 radiculopathy, right side; diffuse sensory peripheral neuropathy, lower extremities; osteoarthritis, fingers, bilateral; osteoarthritis, hips; and mental impairment. (R. 56-57). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (R. 60-61).

Next, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work. (R. 61). With this RFC, the ALJ found that Blakely could perform her past relevant work as a composite layup worker. (R. 66). Accordingly, the ALJ found Plaintiff not disabled through the date of the decision. (R. 67).

## V. MEDICAL HISTORY

In October 2013 while Plaintiff was walking to work from her home, she heard "something like a stick snap and . . .{she} fell to the ground." (R. 79). She was initially off work for a right knee injury. An MRI of the right knee taken in November 2013 showed a "true posterior horn tear" of the medial meniscus. (R. 403). On December 4, 2013, Dr. Kenneth Taylor (and orthopedist) performed right knee arthroscopic surgery with partial medial meniscectomy and superficial chondroplasty of the medial femoral condyle. (R. 263). Initially, Blakey's post-surgical recovery

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

was complicated by left lower leg and ankle pain and swelling. An x-ray and a DVT were within normal limits and Dr. Taylor subsequently diagnosed posterior tibial tendonitis of the left ankle. (R. 264-79, 302). Blakely's pre-surgery pain was reduced some, but she continued to have episodic right knee pain. (R. 298-305).

On March 11, 2014, Blakely reported to Dr. Taylor progressive low back pain that was "constant sharp" with associated right leg pain and numbness. (R. 300). On March 13, 2014, an MRI of the lumbar spine, showed multi-level degenerative changes, most severe at L3-L4 and L4-L5. (R. 404). On March 20, 2014, NCV and EMG studies were consistent with "a diffuse predominantly sensory neuropathy" of both legs and "evidence of a right SI radiculopathy.' (R. 294). After "an aggressive back rehab program," use of a back brace and topical medication, Blakely's pain persisted. (R. 298-300, 320). In April 2014, Dr. Taylor diagnosed degenerative disc disease of the lumbar spine, mild SI lumbar radiculopathy, diffuse sensory peripheral neuropathy, and referred Blakely to a pain specialist. (R. 298).

On May 19, 2014, pain management specialist, Bradley Katz, MD evaluated Blakely for back, leg, neck and shoulder pain. (R. 395-98). Lumbar degenerative disc disease, lumbar spinal stenosis, lumbosacral radiculitis, HTN, sleep apnea, spasm of muscle and cervical radiculitis were diagnosed. (R. 398, 415). Dr. Katz recommended and performed four lumbar epidural injections at L3-4 (R. 393, 408-12, 419, 427) and two at L4-5 (R. 475-77) through July 2015. (R. 392-99, 4-7-28, 470-78). Dr. Katz recommended a surgical consultation for "breast reduction for cervical/trap pain." (R. 398, 412, 415).

In July 2014, Blakely reported a nine-month history of worsening left knee pain and right-hand finger pain and stiffness. (R. 456). An August 2014, a MRI of the left knee showed several abnormalities including meniscus tear. (R. 457). On August 27, 2014, Dr. Taylor performed a second surgery, left knee arthroscopic surgery with partial medial meniscectomy to repair an internal

derangement and medial meniscus tear. (R. 458). As with the right knee, Blakely continued to have intermittent knee pain following the surgery, but her pain was less. (R. 447, 453). On December 24, 2014, rheumatologist, Sohrab Fallahi, MD, evaluated Blakely for diffuse musculoskeletal pain. (R. 443-46). Dr. Fallahi diagnosed Fibromyalgia and noted he thought this was "the major cause of the patient's diffuse musculoskeletal pain." (R. 443).

In addition to Blakely's multiple musculoskeletal impairments, she has long been treated for depression. Her primary care physician initially diagnosed and treated Blakely for depression in August 2011. Lexapro was prescribed in May 2013 and May 2014. (R. 329, 361, 367). Blakely regularly reported trouble with depression, "high irritability", anxiety and decreased concentration. (R. 256-57, 397, 43, 421, 425). On August 5, 2014 psychiatrist Dr. Ramakanth Vemulurl evaluated Blakely. (R. 437-48). Dr. Vemulurl diagnosed major Depression (in partial remission), titrated Blakely's Lexapro and started Cymbalta. (R. 438). In November 2014 after increased symptoms, Trazadone was added. (R. 432).

## VI. Issues

1) Whether the ALJ erroneously found many of Blakely's impairments were not "severe"?
2) Whether the ALJ improperly rejected the opinion of the treating orthopedist?
3) Whether the ALJ erred in making the RFC finding?
4) Whether the ALJ failed to consider the State Agency's RFC assessment?
5) Whether the ALJ failed to fully and fairly develop the record?

*See* Doc. 14, Plaintiff's Brief.

## VII. Analysis

**A. The ALJ did not err in finding certain of Blakely's impairments non-severe.**

Plaintiff alleges that she has a number of non-severe impairments which the ALJ should have found severe. Specifically, Blakely argues that the ALJ erred by failing to find that her impairments

of obesity, radiculopathy, sensory neuropathy, osteoarthritis of the hips and fingers, and a mental impairment were severe. The ALJ, however, found in Plaintiff's favor at step two and proceeded to the other steps in the sequential evaluation. (R. 55-67). *Medina v. Soc. Sec. Admin,* 636 F. App'x 490, 492-493 (11th Cir. 2016) (Even where other impairments should have been characterized as severe any error is harmless because the ALJ found severe impairments and moved onto step three of the test.). Moreover, an ALJ is not required "to indentify every severe impairment at step two . . . even assuming that [claimant] is correct that her additional impairments were 'severe', the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis". *Tuggerson-Brown v. Comm'r of Soc. Sec.,* 572 F. App'x 949, 951-52 (11th Cir. 2014). Plaintiff also argues that the ALJ failed to consider the combined effect of her severe and non-severe impairments in determining the RFC. (Doc. 14, Plaintiff's Brief at p. 8). However, the ALJ stated "[d]espite finding that these impairments are nonsevere, the undersigned has considered all impairments collectively in assessing the claimant's residual functional capacity." (R. 57). Thus, because the ALJ considered all impairments, both severe and non-severe in assessing Plaintiff's RFC, the Court concludes the ALJ did not err at step two of the analysis.

**B. The ALJ did not err in rejecting the opinion of the treating orthopedist.**

Blakely argues that the ALJ improperly gave little weight to Dr. Taylor's opinions that Plaintiff could not work. *See* Doc. 14 at p. 8-11. Dr. Taylor was Plaintiff's treating orthopedic surgeon and recommended she be excused from work following her right knee injury from November 2013 through August 2014. (R. 318, 319, 322, 324, 325). The law is well-settled; "absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v.Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011). (citations omitted). However, "good cause" to stray from the treating physician's opinion exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported

a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1179. If the ALJ does stray from the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis,* 125 F.3d at 1440 (citations omitted). Moreover, the opinion of a non-examining physician alone cannot provide "good cause" because the opinion of a non-examining physician is entitled to little weight if contrary to the opinion of the claimant's treating physician. *See Swindle v. Sullivan,* 914 F.2d 222, 227 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985)).

The ALJ gave little weight to Dr. Taylor's opinions because they were inconsistent with his own treatment notes and findings. (R. 65). Specifically, the ALJ stated as follows:

> Dr. Taylor's opinion is not supported by his treatment records, indicating a generally normal physical examination of her right knee and left ankle after March 2014. The claimant's allegations of an insidious onset of back pain in March 2014 are not credible in light of the objective medical evidence and would not support precluding her from her past relevant work. The fact that, after evaluation in April 2014, Dr. Taylor did not recommend orthopedic follow-up treatment for another three months would also suggest that, from his standpoint, the claimant's condition was not severe. Later, the claimant's rheumatologist determined that fibromyalgia was the main cause of her musculoskeletal pain, and not any orthopedic condition. Therefore, Dr. Taylor's office notes, excluding the claimant from return to work, are assigned little weight.

(R. 65). The Court has independently reviewed the medical evidence of record and concludes that the ALJ's conclusion assigning Dr. Taylor's opinions "little weight" is supported by substantial evidence. *Lewis,* 125 F.3d at 1440. Indeed, Dr. Taylor's treatment notes show that the day after Plaintiff's right knee arthroscopy, Plaintiff reported only minimal pain and Dr. Taylor observed everything was healing well. (R. 304). Nine weeks after arthroscopy of her right knee, Dr. Taylor observed in February 2014 that Plaintiff ambulated with a mild right antalgic gait. (R. 301). In March 2014, Dr. Taylor noted no neurologic abnormalities, even with complaints of pain with activity and thoracolumbar motion decreased by 30% in all directions. (R. 300). However, by

March and April 2014, the evidence showed that Dr. Taylor observed Plaintiff ambulate normally with full thoracolumbar range of motion (with pain on the extreme range of motion) and motor function, sensory function, and deep tendon reflexes all within normal limits. (R. 298, 299). An EMG diagnostic study in April 2014 showed findings consistent with diffuse predominantly sensory neuropathy in the left and right lower extremities with minimal electrophysiological evidence of right S1 radiculopathy, (R. 298, 307).

Moreover, the ALJ recognized that treatment notes from Blakely's rheumatologist and other doctors support a finding of not disabled. (R. 63-66). At the pain management office in May 2014, Blakely had a lumbar steroid injection, but on examination she had normal range of motion, normal strength and muscle tone, normal gait, and was able to stand without difficulty. (R. 397-398). In December 2014, rheumatologist Sohrab Fallahi, M.D., observed multiple areas of soft tissue tenderness around the joints and diagnosed fibromyalgia and opined that this was the cause of Plaintiff's musculoskeletal pain. (R. 449-50). Further, on examination in February 2015, Plaintiff had good range of motion in all joints and was neurologically intact. (R. 442-43). In June 2015, Dr. Fallahi's examination showed no evidence of inflammation in her joints and "fine" mobility. (R. 469). Accordingly, the Court concludes that substantial evidence supports the weight the ALJ assigned to Dr. Taylor's opinions. *Lewis,* 125 F.3d at 1440.

**C. The ALJ did not err in making the RFC finding.**

Plaintiff argues that the ALJ's RFC finding is not rooted in the medical evidence for three reasons: First, the ALJ mischaracterized the medical evidence. Second, the RFC is conclusory. Third, the ALJ did not mention or rely on the state agency single decision maker. (Doc. 14, at p. 12-14). However, it is error for an ALJ to treat an opinion of a single decision maker who has no medical credentials as substantial evidence for purposes of making an RFC. *See Siverio v. Comm'r of Soc. Sec,* 461 Fed. App'x 869, 871-72 (11th Cir. 2012) (Court reversed and remanded for

reconsideration of Plaintiff's RFC where the ALJ erred in considering the opinion of a single decision maker holding "an SDM with no apparent medical credentials, . . . was not an acceptable medical source."). Thus, the Court concludes Plaintiff's argument that the ALJ erred in failing to consider the decision of the single decision maker fails.

Next, the Court considers whether substantial evidence supports the ALJ's RFC determination. *Lewis,* 125 F.3d at 1440. Indeed, after a careful review of all the medical evidence of record, the Court concludes that the ALJ fully considered and discussed Blakely's non-severe and severe impairments and all the record evidence in concluding that she could perform a full range of medium work. (R. 56-66). Moreover, after detailing the medical evidence of record, and Plaintiff's activities of daily living, the ALJ stated the RFC "is supported by the longitudinal record in this case; the findings of her treating providers, particularly her rheumatologist and psychiatrist, her activities of daily living; and her work history at the medium level of exertion." (R. 66). Indeed, the ALJ stated "the claimant's psychiatrists performed musculoskeletal examinations of the claimant around this time with completely normal findings." (R. 64, 430). The ALJ further stated that "the claimant did not suggest such severe back pain while visiting her rheumatologist, and there was no reduction the claimant's range of motion on his examinations." (R. 64, 8-16, 467-69). The Court has carefully and independently reviewed all the evidence of record and concludes that substantial evidence supports the ALJ's conclusion that Blakely can perform a full range of medium work.

**D. The ALJ fully and fairly developed the record.**

Plaintiff appears to combine her identified fourth and fifth issues into one section of her brief *Compare* Doc. 14 at p. 1 *with* p. 14-15. Specifically, Plaintiff argues that the ALJ failed to fully and fairly develop the record because there was no state agency physician opinion in the record; and therefore, Plaintiff should have ordered a consultative medical exam. (Doc. 14 at p. 14-15). However, the ALJ is not required to order a consultative examination if the record contains

sufficient evidence for the ALJ to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007). Moreover, "a showing of prejudice must be made before we will find that a hearing violated claimant's rights of due process and requires a remand to the Secretary for reconsideration." *Townsend v. Comm'r of Soc. Sec. Admin.*, 555 F. App'x. 888, 891 (11th Cir. 2014). Because the Court concludes that the ALJ had sufficient evidence before him to make a decision and Plaintiff has not made a showing of prejudice, the Court concludes the ALJ's decision that Plaintiff is not disabled is due to be affirmed.

## VIII. Conclusion

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision. A separate judgment will follow.

DONE this 14th day of March, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE